IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND LEON JOHNSON,

    Plaintiff,　　　　　　　　　　No. 2:12-cv-1843 KJN P

    vs.

SHANKARI REDDY, et al.,

    Defendants.　　　　　　　　　ORDER

    _____/

I. <u>Introduction</u>

    Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. All parties have consented to proceed before the undersigned for all purposes. <u>See</u> 28 U.S.C. § 636(c). This case is proceeding on plaintiff's amended complaint against defendants Dr. Joseph Torruella, Dr. Jeu, and Dr. Reddy. (ECF No. 8.) Pending before the court is defendants' motion to dismiss these claims based on plaintiff's alleged failure to first exhaust administrative remedies as to defendants Torruella and Jeu, and alleged failure to plead facts sufficient to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) as to all the defendants. After carefully reviewing the record, defendants' motion to dismiss is granted based on plaintiff's failure to first exhaust administrative remedies in connection with defendants Torruella and Jeu, and granted as to defendant Reddy, but with

leave to amend.

## II. Plaintiff's Amended Complaint

Plaintiff claims that defendants were deliberately indifferent to plaintiff's serious medical needs. Plaintiff alleges that defendants Dr. Jeu and Torruella injected plaintiff's scalp with cortisone shots which allegedly aggravated plaintiff's keloid bumps, causing swelling, severe pain, permanent hair loss, scarring, weeping, and irritation. Plaintiff alleges that his requests for medical care to correct these issues were ignored.

Plaintiff alleges that on February 10, 2011, defendant Dr. Reddy refused to treat plaintiff's worsening medical condition following the treatments provided by Drs. Jeu and Torruella, and that Dr. Reddy also refused to treat plaintiff's severe back pain resulting from a gunshot wound that left a pellet of the bullet lodged in plaintiff's spine.

## III. Fourteenth Amendment Claims

In the amended complaint, plaintiff relies on the Fourteenth Amendment in support of his claims concerning his medical treatment. For the reasons explained below, such reliance is unavailing.

The Due Process Clause of the Fourteenth Amendment confers substantive rights. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992). However, where a specific constitutional amendment provides explicit protection against a particular type of governmental behavior, "'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

In the instant case, the Eighth Amendment provides the protection against the type of behavior of which plaintiff complains. The Fourteenth Amendment provides plaintiff no greater protection than the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). Thus, plaintiff's due process claims will be dismissed.

////

IV. <u>California Penal Code</u>

Plaintiff alleges that defendants are in violation of California Penal Code §§ 2650 and 2652. (ECF No. 8 at 3.) The court construes plaintiff's allegation to be that defendants violated these penal code sections. Sections 2652 and 2653 concern the mistreatment of prisoners. A violation of section 2652 is a misdemeanor, and a violation of section 2653 subjects the individual to disciplinary action by the Department of Corrections and Rehabilitation.

A private right of action under a criminal statute has rarely been implied. <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 316 (1979). Where a private right of action has been implied, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." <u>Chrysler Corp.</u>, 441 U.S. at 316 (internal quotation and citation omitted). The court has reviewed the penal statutes in question and there is no indication that civil enforcement of any kind is available to plaintiff. <u>Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n</u>, 739 F.2d 1467, 1469-70 (9th Cir. 1984). Accordingly, the court finds that plaintiff fails to state any claims upon which relief may be granted based on the alleged violations of California Penal Code §§ 2650 and 2652.

V. <u>Alleged Failure to Exhaust</u>

Defendants claim plaintiff failed to first exhaust his administrative remedies as to defendants Torruella and Jeu. Plaintiff's opposition to defendants' motion does not dispute that plaintiff failed to exhaust administrative remedies as to these defendants.

A. <u>Legal Standard re Exhaustion</u>

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of

3

confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.  The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).  The Supreme Court has cautioned courts against reading futility or other exceptions into the PLRA exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  Id., at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

4

Id. at 90-91. Thus, compliance with grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84. When the rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). This requirement is so because the primary purpose of a prison's administrative review system is to "notify the prison of a problem and to facilitate its resolution." Griffin, 557 F.3d at 1120.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies. Id. at 1119-20.

Contemporaneous with the filing of defendants' motion, plaintiff was provided notice of the requirements for opposing a motion to dismiss for failure to exhaust administrative remedies pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (ECF No. 16-2 at 1.)

B.  Analysis re Exhaustion

Plaintiff provided copies of his administrative appeals concerning the medical treatment for his keloid bumps and severe back pain resulting from a gun shot wound. (ECF No. 8 at 15 - 24.) As argued by defendants, these appeals specifically address defendant Dr. Reddy's alleged refusal to examine or treat plaintiff on February 10, 2011, and her subsequent treatment of plaintiff. (Id.) None of these appeals allege actions or inactions by defendants Dr. Torruella or Dr. Jeu. Although plaintiff is not required to specifically name defendants in his administrative appeals, Jones v. Bock, 549 U.S. 199, 217 (2007), he is required to allege sufficient facts to put prison officials on notice of such claims. "A grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

5

2009). Here, plaintiff failed to allege facts attributable to defendants Torruella or Jeu in his administrative appeals; rather, his administrative appeals focused specifically on the alleged actions and inactions of defendant Dr. Reddy. Thus, these appeals fail to demonstrate that plaintiff exhausted his administrative remedies as to defendants Torruella or Jeu.

In opposition, plaintiff failed to address the issue of exhaustion, opting to argue the merits of the claims set forth in his amended complaint. (ECF No. 20 at 3-6.)

Accordingly, plaintiff failed to rebut defendants' claim that plaintiff did not exhaust his administrative remedies as to defendants Dr. Torruella and Dr. Jeu prior to filing the instant action, and plaintiff's claims against defendants Dr. Torruella and Dr. Jeu are dismissed. Thus, the court need not reach defendants' alternative ground for dismissal as to these defendants.

VI. Eighth Amendment Claim - Dr. Reddy

As noted above, plaintiff contends that on February 10, 2011, defendant Dr. Reddy refused to treat plaintiff's worsening medical condition following the treatments provided by Drs. Jeu and Torruella, and that Dr. Reddy also refused to treat plaintiff's severe back pain resulting from a gunshot wound that left a pellet of the bullet lodged in plaintiff's spine. Defendants argue that plaintiff's claim as to defendant Dr. Reddy constitutes a difference of opinion as to appropriate medical care based on the medical care described in the documents appended to the amended complaint, and thus does not amount to deliberate indifference. In opposition, plaintiff recounted his allegations set forth in the amended complaint, without further factual development.

A. Eighth Amendment Standards

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976).) The two prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

6

or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).) Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060.) In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health. . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.) A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

7

B. Administrative Appeals and Medical Records

Plaintiff appended copies of his administrative appeals and medical records to the amended complaint, which describe the following medical care provided to plaintiff.

On February 10, 2011, plaintiff was examined by defendant Dr. Reddy, who diagnosed plaintiff with chronic low back pain; plaintiff's gait was steady. (ECF No. 8 at 18.) Plaintiff suffered scalp bleeding as a result of three steroid injections into the occipital keloid.[1] (Id.) Plaintiff was advised to keep the area clean and dry, and no plastic surgeon referral was indicated. (Id.) Plaintiff complained of a cyst in his left armpit, which Dr. Reddy, upon exam, noted was a 1cm cyst with no edema or sign of infection. (Id.) Plaintiff was referred for minor surgical excision of the cyst by Dr. Torruella. (Id.) Dr. Reddy noted plaintiff was currently prescribed ibuprofen in the evening for pain. (Id.)

On February 15, 2011, plaintiff received an x-ray of his lumbosacral spine. (ECF No. 8 at 23.) The x-ray was ordered on February 10, 2011. (ECF No. 8 at 34.)

On March 4, 2011, plaintiff was seen in connection with his appeal. (ECF No. 8 at 34.) Plaintiff was evaluated for red bumps on his upper extremities, and plaintiff was referred for minor surgery. (ECF No. 8 at 34.) Plaintiff's keloid occipital showed no signs of active infection. (ECF No. 8 at 34.) Plaintiff's back was examined, and his range of motion and heal/toe were noted as within normal limits. (Id.) His gait was steady. (Id.)

On March 14, 2011, plaintiff was interviewed by defendant Dr. Reddy regarding plaintiff's administrative appeal. (ECF No. 8 at 18.)

On April 27, 2011, plaintiff met with Dr. Reddy in connection with the second level appeal, and the doctor noted that plaintiff indicated his armpit cyst had disappeared, and plaintiff stated he no longer needed minor surgery. (ECF No. 8 at 18, 23.) Dr. Reddy noted that there was no medical indication for plaintiff to be seen by plastic surgery for the keloid occipital area.

---

[1] The medical progress note from July 27, 2010, indicates that the steroid injection was provided "to see whether it will improve [plaintiff's] condition." (ECF No. 8 at 30.)

(ECF No. 8 at 18.) Dr. Reddy discussed with plaintiff his chronic low back pain, the x-ray results, and back care, stretching, exercises, injury prevention and pain goals. (ECF No. 8 at 19.) Plaintiff was prescribed ibuprofen as needed for pain. (Id.)

On May 16, 2011, plaintiff submitted a health care services request form, seeking evaluation for bleeding keloid bumps on the back of his neck. (ECF No. 8 at 23; 37.) Plaintiff was seen on May 17, 2011, evaluated, and prescribed naproxen, and referred to his primary care physician for an appointment on May 23, 2011. (ECF No. 8 at 37.)

On May 23, 2011, plaintiff stated that the triamcinolone acetonide cream, prescribed to control the bleeding keloid bumps, did not work to stop the bleeding. (ECF No. 8 at 23.) Plaintiff was prescribed naproxen and methocarbamol for his back pain. (ECF No. 8 at 21; 23.)

Plaintiff was examined on August 23, 2011, and medical records indicated that plaintiff's back was non-tender and straight leg raises were negative, and that ibuprofen and nortriptyline were prescribed for plaintiff's pain. (ECF No. 8 at 23.)

Plaintiff's comprehensive accommodations chrono provided for a bottom bunk, lower tier, and physical limitations, and the pharmacy profile reflected prescription medications for neuropathic pain and allergies. (Id.)

On March 13, 2012, plaintiff submitted a health care services request form, seeking treatment for the bleeding of his occipital keloid. (ECF No. 8 at 38.) Plaintiff stated that the triamcinolone acetonide cream and the hydrocortisone cream were not stopping the severe pain and bleeding. (Id.) Plaintiff sought renewal of medication for his back pain. (Id.) Plaintiff was examined and advised to continue medications as prescribed, and to follow education and treatment plan. Plaintiff was scheduled to see his primary care provider in two weeks. (Id.)

On May 26, 2012, plaintiff submitted a health services request form requesting medicine for his bleeding keloids and a refill of the ibuprofen prescription for his back pain. (ECF No. 8 at 39.) On May 27, 2012, the triage nurse reported that plaintiff stated he has had keloids on the back of his head since 1990, that it's itching and he started to scratch, causing it to bleed. (Id.) It

1 stopped bleeding now.  (Id.)  Plaintiff complained of itching and was scratching it with a comb
2 during the medical visit.  (Id.)  Plaintiff had no current medications for the lesion, and denied
3 pain or headache.  (Id.)  Plaintiff was instructed to maintain good hygiene; apply pressure
4 dressing if bleeding recurs; avoid rubbing, chafing or scratching the keloids; and to use a cool
5 washcloth to decrease itching.  (Id.)  Plaintiff's prescription for ibuprofen for back pain was
6 renewed.  (Id.)

## C. Analysis

The sole allegation as to defendant Dr. Reddy is that on February 10, 2011, Dr. Reddy allegedly refused to treat plaintiff's worsening keloids or to treat plaintiff's severe back pain. Plaintiff alleges that Dr. Reddy "did not offer any palliative measures, treatment options or possible referrals to treatment specialists." (ECF No. 8 at 4.)  However, the records provided by plaintiff reflect that plaintiff was provided treatment for both his keloid bumps and his back pain on February 10, 2011.  In addition, an x-ray was ordered on February 10, 2011.  Such treatment does not evidence deliberate indifference.

In his administrative appeal, plaintiff claims that in 2010 a consultant advised plaintiff to discuss possible laser surgery with Dr. Reddy, but plaintiff claimed that Dr. Reddy "refused to acknowledge the recommendation." (ECF 8 at 16.)  However, Dr. Reddy noted that no plastic surgeon referral was indicated.  Thus, to the extent plaintiff argues that he should have received laser surgery, such an argument constitutes a mere difference of opinion concerning medical treatment, which does not rise to the level of a constitutional violation.  Franklin, 662 F.2d at 1344.

The records provided by plaintiff demonstrate that plaintiff suffers from recurring keloids, and when plaintiff presented for keloid treatment he was provided with education on how to avoid bleeding and infections, and provided with prescription creams as needed.  While plaintiff may believe he requires plastic surgery or some other form of treatment, defendant Dr. Reddy's failure to provide such alternative medical treatment does not constitute deliberate indifference.

1  Rather, it is a mere difference of opinion that does not rise to the level of a cognizable civil rights
2  claim.
3        The records provided by plaintiff also demonstrate that when plaintiff presented with
4  back pain, medical personnel either renewed or adjusted his pain medication as appropriate.
5  Plaintiff alleges no facts demonstrating that he was prescribed no pain medication for his back
6  pain, or that he suffered severe pain over a period of time without being provided pain
7  medications.  Plaintiff does not contend that he requires back surgery he has not been provided.
8        Therefore, defendant's motion to dismiss plaintiff's claims against defendant Dr. Reddy
9  is granted.  In light of the medical treatment plaintiff has been provided, it appears unlikely that
10 plaintiff can amend his complaint to state a cognizable Eighth Amendment violation.  However,
11 the court will, in an abundance of caution, grant plaintiff leave to file a second amended
12 complaint as to his Eighth Amendment claims solely against defendant Dr. Reddy.  Plaintiff
13 should not renew his Fourteenth Amendment claims or his claims under the California Penal
14 Code.
15       Plaintiff is not required to amend his complaint.  However, if plaintiff chooses to amend
16 the complaint, plaintiff must demonstrate how the conditions about which he complains resulted
17 in a deprivation of plaintiff's constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).
18 Also, the second amended complaint must allege in specific terms how each named defendant is
19 involved.  Id.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative
20 link or connection between a defendant's actions and the claimed deprivation.  Id.; May v.
21 Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.
22 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights
23 violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).
24       In addition, plaintiff is hereby informed that the court cannot refer to a prior pleading in
25 order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an
26 amended complaint be complete in itself without reference to any prior pleading.  This

1  requirement exists because, as a general rule, an amended complaint supersedes the original

2  complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second

3  amended complaint, the original pleading no longer serves any function in the case.  Therefore,

4  in a second amended complaint, as in an original complaint, each claim and the involvement of

5  each defendant must be sufficiently alleged.

      However, plaintiff need not re-append the exhibits previously provided.  The exhibits appended to plaintiff's amended complaint are a part of the court record and may be referenced by any party to this litigation.

VII.  Conclusion

      In accordance with the above, IT IS HEREBY ORDERED that:

      1. Defendants' motion to dismiss plaintiff's Fourteenth Amendment claims is granted;

      2. Defendants' motion to dismiss plaintiff's claims under the California Penal Code is granted;

      3. Defendants' motion to dismiss defendants Dr. Torruella and Dr. Jeu based on plaintiff's failure to exhaust administrative remedies (ECF No. 16) is granted;

      4. Defendants' motion to dismiss defendant Dr. Reddy (ECF No. 16) is granted;

      5. Plaintiff's amended complaint (ECF No. 8) is dismissed; and

      6. Plaintiff is granted leave to file a second amended complaint within thirty days from the date of this order.  Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."  Failure to file a second amended complaint in accordance with this order will result in the dismissal of this action.

DATED: June 14, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john1843.mtd